IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

BEVERLY MASSEY MOUNT,
TERESA JOHNSON,
SHAQUATAN NICOLE FLEMMING,
QUINEISHA HYLTON, and
NATHANIEL JACKSON,

    Plaintiffs,
vs.                            CASE NO:

PULTE HOME COMPANY, LLC, and
S&ME, INC.,

    Defendants.               /

## CLASS ACTION COMPLAINT

Beverly Massey Mount, Teresa Johnson, Shaquatan Nicole Flemming, Quinesha Hylton, and Nathaniel Jackson, the plaintiffs, by and through the undersigned counsel, hereby sue the defendants and allege as follows:

1. This is a case arising from the outrageous, needless and unthinkable desecration, destruction and deluge of the remains and graves of generations of loved ones who had been laid to rest in peace at Oakland Tildenville Cemetery by their families. All in the name of increased profits, convenience and so-called progress, the defendants constructed a second entrance drive into their new, "luxury" subdivision, Longleaf at Oakland and, when it was clear that the drive would have serious flooding issues, the defendants recklessly and wantonly added a culvert that forced all of the runoff water to rush into the historic Oakland Tildenville Cemetery, flooding the graves, sending caskets and remains above ground, and destroying all sanctity and respect for those who were buried there. The families who buried generations of loved ones at Oakland Tildenville Cemetery have been left with the shock and horror of seeing their loved ones' remains desecrated, the horrible uncertainty of not knowing the condition of the remains or their fate, fearing the absolute worst, and the pain of knowing their loved ones' final resting places were treated with no

more respect or dignity than if they were sewers or dumping grounds.

## PARTIES, JURISDICTION, AND VENUE

2. This is an action for damages that exceeds the sum of THIRTY THOUSAND DOLLARS ($30,000.01), exclusive of costs, interest and attorneys' fees. The actual value of the plaintiffs' claims will be determined by a fair and just jury in accordance with Article 1, Section 21, Fla. Const.

3. Beverly Massey Mount is and was, at the time of all incidents described herein, a natural person residing in Orlando, Florida. She is the surviving child and next of kin of Grant and Mamie Massey, who were laid to rest at Oakland Tildenville Cemetery in 1976 and in 2008.

4. Teresa Johnson is and was, at the time of all incidents described herein, a natural person residing in Rex, Georgia. She is the surviving child and next of kin of Booker T. and Alberta Coats, who were laid to rest at Oakland Tildenville Cemetery in 2016 and in 1994.

5. Shaquatan Nicole Flemming is and was, at the time of all incidents described herein, a natural person residing in Hampton, Georgia. She is the surviving mother and next of kin of her deceased daughter, who was laid to rest at Oakland Tildenville Cemetery in 1999.

6. Quineisha Hylton is and was, at the time of all incidents described herein, a natural person residing in Groveland, Florida. She is the surviving mother and next of kin of Amyah, Grace, Faith and Hope Johnson, who were laid to rest at Oakland Tildenville Cemetery in 2009.

7. Plaintiff Nathaniel Jackson is and was, at the time of all incidents described herein, a natural person residing in Plantation, Florida. He is the surviving son and next of kin of Andrew, Sr. and Amanda Jackson, who were laid to rest at Oakland Tildenville Cemetery in 1990 and 1996.

8. At all times material to this action, Defendant Pulte Home Company, LLC was and is a foreign limited liability company doing business in the State of Florida. Defendant Pulte Home Company, LLC's principal place of business is located in Atlanta, Georgia.

9. At all times material to this cause of action, Defendant S&ME, Inc. was and is a foreign corporation, with its principal place of business in Raleigh North Carolina, doing business in the State of Florida.

10. Upon information and belief, at all relevant times each of the defendants acted as the agent, instrumentality, partner, joint venturer, and/or alter ego of each other such that a unity of purpose existed between them to a sufficient extent that the defendants shall be jointly and severally liable.

### FACTS APPLICABLE TO ALL CLAIMS

11. Defendant Pulte Home Company, LLC is the owner and developer of a new subdivision, Longleaf at Oakland. Defendant SM&E, Inc. was the designer for the subdivision.

12. Longleaf at Oakland was constructed in the heart of an over century old community where orange groves used to stand, situated next to the historic church cemetery, Oakland Tildenville Cemetery. Longleaf at Oakland is advertised as a providing a "low maintenance lifestyle" of "luxury townhomes" and homes with "stylish finishes," and a pool, cabana and "tot lot." *See* https://www.pulte.com/homes/florida/orlando/oakland/longleaf-at-oakland-210069. Some of the homes in Longleaf at Oakland have "impressive staircases," while others sport "vast entertaining spaces," "walk in closets," and cafes looking out onto courtyards.

13. In their quest for ever-greater profits and in the name of so called "progress" and convenience, the defendants constructed a new, second drive into their subdivision, one that could be accessed straight from the highway without the need to drive through the historic Oakland community and the families who had lived there for generations. This new, second entrance drive ran right beside the town church and Oakland Tildenville cemetery.

14. When it became clear that this new drive would flood, the defendants wantonly and recklessly constructed a culvert to divert all of the runoff water off the drive, which forced the water instead to rush into the Oakland Tildenville Cemetery.

15. The defendants took these actions fully knowing or turning a knowing blind eye to the impact the deluge of water would have on the graves and remains laid to rest at Oakland Tildenville Cemetery, and did so without any regard for the obvious, foreseeable terrible pain, shock and horror their actions would cause the families who had laid their loved ones to rest in that cemetery for generations.

16. Just as the defendants planned, with heavy rains, the floodwaters were swept away from Longleaf at Oakland. The water, instead, was dumped into the Oakland Tildenville Cemetery.

17. The first massive flooding and desecration caused by the defendants' actions happened in September, 2020.

18. Runoff water was forced into Oakland Tildenville Cemetery by the defendants, flooding the cemetery, causing caskets to rise, the cemetery to become too dangerous to visit and disturbing and desecrating the generations of graves and remains that had been laid to rest there by their families.

## **CLASS ACTION ALLEGATIONS**

19. The plaintiffs reassert and reallege the preceding paragraphs as if fully set forth herein.

20. The named plaintiffs (hereinafter "The Families") seek equitable relief and damages on behalf of themselves and all other families of decedents whose remains were laid to rest at Oakland Tildenville Cemetery. This action alleges claims arising from the desecration of the remains at Oakland Tildenville Cemetery, and includes claims for injunctive and declaratory relief, as well as claims for nuisance, willful and/or wanton mishandling of remains, intentional infliction of emotional distress, interference with easement rights pursuant to Florida Statute §704.08, and punitive damages.

21. This action is brought pursuant to the applicable provisions of Fla.R.Civ.P. 1.220 on behalf of a class defined as:

> All those who are or were next of kin of any decedent laid to rest at Oakland Tildenville Cemetery on or before September 28, 2020.

22. Excluded from the class are the defendants, including any parent, subsidiary, affiliate or controlled person of these entities and their officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

23. The class is so numerous that individual joinder of all its members is impracticable.

24. The identities of the class members for purposes of class notice may be readily ascertained from records from Oakland Tildenville Cemetery.

25. In this action, common issues of law and fact relating to the conduct, rights and responsibilities, and resulting liability of the defendants predominate over any issues affecting only individual class members.

26. The claims of the Families are typical of the claims of the class. The Families and the class members have been subjected to the same unlawful behavior of the defendants, giving rise to common legal and equitable claims.

27. The Families will fairly and adequately represent and protect the interests of the class and none have any interests that are adverse to the interests of the class.

28. The Families have retained counsel who are competent and experienced in class action and complex litigation, including in cases involving the desecration and mishandling of remains. The Families and their counsel are committed to prosecuting this action on behalf of the class members vigorously on behalf of all class members and have the financial resources to do so.

29. Neither the Families nor their counsel have any interests adverse to the class members.

30. This Court may elect, in its discretion, to maintain these claims as a class action under Rule 1.220(b)(1), (2) and/or (3).

31. Class certification is appropriate pursuant to Rule 1.220(b)(1) of the Florida Rules of Civil Procedure because the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the defendants and/or because adjudications respecting individual members of the class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impeding their ability to protect their interests.

32. Class certification is also appropriate pursuant to Rule 1.220(b)(2) of the Florida Rules of Civil Procedure because the defendants acted on grounds generally applicable to the class, making final injunctive and/or declaratory relief appropriate.

33. Class certification is also appropriate pursuant to Rule 1.220(b)(3) of the Florida Rules of Civil Procedure because common issues of law and fact predominate over issues involving only individual class members.

34. A class action approach is superior to other available methods for the fair and efficient adjudication of this dispute because common questions of law and fact predominate over any questions that may affect only individual members of the class and there would be significant economies to the courts and the parties in litigating the common issues on a class wide basis rather than in repetitive individual trials. A class action approach is also superior in this matter because hundreds of individual lawsuits would unnecessarily burden the courts, multiply the costs of litigation, and could impede the ability of some class members to receive any compensation at all should the funds available to satisfy individual claims be exhausted. A class approach would consolidate these matters and create fewer management difficulties because it would provide the benefits of unitary adjudication, judicial economy, economies of scale, comprehensive supervision by a single court, and the fair and equitable handling of all of the class members' claims in a single forum..

35. Class certification is also appropriate because this Court can designate particular claims or issues for class wide treatment, and/or may designate one of more subclasses pursuant to Rule 1.220(d)(4).

## COUNT I- REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

36. The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

37. The Families ask this Court for declaratory and equitable relief including but not limited to a declaration of the rights of the Families and the class members regarding the resting places of their loved ones, and the responsibilities and restrictions on the defendants regarding any further intrusions or acts that impact Oakland Tildenville Cemetery, the graves located in the cemetery, and the remains that have been buried there.

38. The Families, on behalf of themselves and the class members, further request declaratory relief, determining and declaring the defendants to be financially responsible for the costs and expenses of remedying the damage that has been done to the remains and graves at Oakland Tildenville Cemetery, laying the remains that have been disturbed to rest lawfully and with dignity, and removing the culvert so that further damage is not inflicted on the Families.

39. The defendants' actions and the resulting flooding, destruction and desecration of the remains and graves at Oakland Tildenville Cemetery have caused and continue to cause irreparable injury to the Families and the class members, who have a clear legal right and obligation to insure that their loved ones are buried and will rest in peace lawfully, and with dignity and respect.

40. No adequate remedy at law exists to address the irreparable injuries inflicted on the Families and the class members by the defendants' conduct.

41. Accordingly, The Families, on behalf of themselves and the class, request the injunctive relief, including but not limited to enjoining the defendants from diverting water onto Oakland Tildenville Cemetery, and enjoining the defendants from any further intrusions upon or interference with Oakland Tildenville Cemetery and the graves and remains that have been laid there to rest in peace.

## COUNT II - NUISANCE

42. The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

43. The Families and the class members, as the surviving next of kin of decedents who were laid to rest at Oakland Tildenville Cemetery, had and have a quasi-property right in and legitimate claim of entitlement to the remains of their loved ones for the purposes of providing that the remains are properly, lawfully and respectfully disposed of and will rest in peace.

44. The Families and the class members, as the surviving next of kin of decedents who were laid to rest at Oakland Tildenville Cemetery, also had and have an easement right on the grounds of Oakland Tildenville Cemetery for the purposes of ingress and egress to visit the graves of their loved ones.

45. Through their actions described herein, the defendants desecrated the resting places of the Families' and the class members' loved ones, unreasonably interfering with, annoying and disturbing the Families' and class members' rights and the Families' and class members' reasonable use, possession and exercise of their rights regarding the proper and dignified burial and disposition of the remains.

46. Further, through their actions described herein, the defendants flooded and swamped the Oakland Tildenville Cemetery, unreasonably disturbing and interfering with the Families' and class members' reasonable exercise of their rights to visit the graves of their loved ones.

47. The defendants' actions were not a reasonable use or reasonable exercise of dominion over the land, and instead unreasonably invaded upon the rights and interests of the Families and the class members.

48.     The defendants' actions were intentional, wanton, willful and/or showed an entire want of care or great indifference to others, including the Families and class members, who for generations have buried their loved ones at Oakland Tildenville Cemetery.

49.     The defendants' actions constituted a private nuisance.

50.     The defendants' actions have caused and continue to cause serious injury to the Families and the class members, including discomfort, annoyance, inconvenience and severe emotional distress.

### COUNT III- TORTIOUS INTERFERENCE WITH AND MISHANDLING OF REMAINS, AND TORTIOUS INTERFERENCE WITH RIGHTS INVOLVING REMAINS

51.     The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

52.     The defendants owed a duty to use reasonable care to avoid causing unreasonable, foreseeable harm to others.  Specifically, the defendants owed a duty to use the level of care, skill and treatment that, in light of all of the relevant surrounding circumstances would be used by reasonable members of the defendants' professions.  The defendants' duties included using reasonable care to avoid the traumatic, reasonable and foreseeable harm that flooding the Oakland Tildenville Cemetery caused the families of loved ones buried there.

53.     The Families and the class members had rights to the remains of their loved ones for the purpose of providing them a lawful, dignified, final disposition – in this case by laying their loved ones to rest in peace at Oakland Tildenville Cemetery.

54.     The defendants, through their conduct described herein, invaded and interfered with the rights of the Families and the class members and the proper, respectful internment of the remains of their loved ones.

55. The defendants, through their conduct described herein, improperly and indecently desecrated, mistreated and physically interfered with the remains of the Families' and the class members' loved ones.

56. The defendants' conduct was wanton, willful and/or malicious.

57. Due to the defendants' conduct, the flood waters that swamped Oakland Tildenville Cemetery physically impacted the graves and all those family members who endeavored to visit the graves of their loved ones.

58. The defendants' conduct caused and continues to cause injuries to the Families and the class members, including severe emotional distress.

## COUNT IV –
## INTENTIONAL AND/OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

59. The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

60. The defendants' actions described herein were intentional and/or reckless.

61. The defendants knew or reasonably should have known that their conduct and choices would reasonably certainly cause the Families' and class members' distress.

62. The defendants' conduct was outrageous, odious and utterly intolerable in a civilized community.

63. The defendants' conduct was particularly outrageous and intolerable in light of the long-recognized particular solicitude for the emotional vulnerability of survivors regarding any improper behavior toward the remains of a loved one.

64. The defendants' conduct caused and continues to cause the Families and class members to suffer damages including severe emotional distress.

## COUNT V-
## INTERFERENCE WITH EASEMENT RIGHTS

65. The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

66. Florida law protects all grieving and bereaved families by granting them an easement right over cemetery grounds, an easement for ingress and egress for the purpose of visiting the cemetery at reasonable times and in a reasonable manner.

67. Florida law provides this statutory easement so that all Floridians can visit and pay their respects to their departed loved ones who have been laid to rest in peace in a cemetery.

68. The only reasonable damages arising from interference with this easement right include emotional distress.

69. In this case, the Families and the class members possessed easements on the grounds of Oakland Tildenville Cemetery to insure that they could visit the graves of their loved ones and pay their respects.

70. The defendants' conduct described herein interfered with the Families' and the class members' statutory easement rights.

71. The defendants' interference with these statutory easement rights caused and continues to cause injuries to the Families and the class members, including severe emotional distress.

## PUNITIVE DAMAGES

72. The Families reassert and reallege the preceding paragraphs as if fully set forth herein.

73. Pursuant to the Florida Department of Transportation's Drainage Connection Permit 2018-D-594-018, that the defendants submitted on May 4, 2018, the defendants knew long before the flooding of the catastrophic impact their new drainage culvert would have on the cemetery. As

is plan from the image below, the permit, itself, shows the intentional direction of the flow of water towards the cemetery:



74. As the defendants knew, historically, and prior to the defendants' addition of the drainage culvert, water flowed to the east along West Colonial Drive into retention ponds on adjacent property. The addition of the roadway and drainage culvert was designed to and did shift the flow of water towards the opposite direction – west - along West Colonial Drive, forcing the water into the cemetery.



75. The defendants' conduct was intentional.

76. The defendants knew of the wrongfulness of their conduct.

77. The defendants knew of the high probability that injury or damage to the Families and class members would result from their choice to dump water into Oakland Tildenville Cemetery.

78. Yet, despite that knowledge, the defendants intentionally pursued the conduct, built the culvert which performed exactly as the defendants intended, and flooded, disturbed and desecrated the cemetery and graves.

79. The defendants' conduct was grossly negligent.

80. The defendants' conduct was so reckless and wanting in care that it constituted a conscious disregard or indifference to the rights and welfare of the Families and class members.

81. The defendants caused serious injuries to the Families and class members, including severe emotional distress.

82. Because the defendants conduct was intentional and/or grossly negligent, punitive damages are warranted – to punish the defendants and to deter the defendants and all others from engaging in such conduct ever again.

## **PRAYER FOR RELEIF**

**WHEREFORE**, The Families sue the defendants and ask:

a) Certification of this action as a class action, appointment of The Families as class representatives and undersigned counsel as class counsel, and designation of any appropriate subclasses, for any or all claims and issues, under Florida's applicable class action provisions;

b) An award of injunctive and declaratory relief described herein, including a judicial determination of the rights and responsibilities of the parties regarding the cemetery premises and the remains that are the subject to this action;

c) That a jury be empaneled to hear this case;

d) An award of compensatory and punitive damages, in an amount deems appropriate by the trier of fact, but in excess of Thirty Thousand Dollars ($30,000.01);

e) An award of pre- and post-judgment interest;

f) An award of costs, including but not limited to discretionary costs, attorneys' fees and expenses incurred in pursuing this case; and

g) Such other relief as the Court deems just and proper and/or to which they may be entitled.

**Respectfully Submitted, this 18th day of November, 2020**

Tyler R. Kobylinski
Tyler R. Kobylinski, Esquire
FBN: 115506
S. Maxwell Karrick, Esquire
FBN: 119762
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
Orlando, FL 32801
Telephone:    (407) 420-1414
Primary email: TKobylinski@forthepeople.com
Secondary email: MKarrick@forthepeople.com
EGuzman@forthepeople.com;
SNaranjo@forthepeople.com
Attorneys for Plaintiff