**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BEVERLY MASSEY MOUNT;
TERESA JOHNSON; SHAQUATAN
NICOLE FLEMMING; QUINEISHA
HYLTON; and NATHANIEL
JACKSON,

    Plaintiffs,

v.                                                                        Case No. 6:20-cv-2314-RBD-LRH

PULTE HOME COMPANY, LLC;
and S&ME, INC.,

    Defendants.
_____

## ORDER

Before the Court are:

1. Plaintiffs' Motion and Memorandum in Support of Motion for Class Certification (Doc. 77 ("Motion"));

2. Plaintiffs' Supplemental Evidentiary Submission in Support of Class Certification (Doc. 79);

3. Pulte Home Company, LLC's Response and Legal Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. 87);

4. Defendant, S&ME, Inc.'s, Joinder in Defendant, Pulte Home Company, LLC's, Response and Legal Memorandum in Opposition

       to Plaintiffs' Motion for Class Certification (Doc. 89);

5.     Plaintiffs' Reply Regarding Motion for Class Certification (Doc. 94);

6.     Pulte Home Company, LLC's Surreply in Opposition to Plaintiffs' Motion for Class Certification (Doc. 99); and

7.     Defendant, S&ME, Inc.'s, Amended Joinder in Defendant, Pulte Home Company, LLC's, Surreply in Opposition to Plaintiffs' Motion for Class Certification (Doc. 101).

Plaintiffs' Motion is due to be denied without prejudice.

## BACKGROUND

This case involves the historic Oakland Tildenville Cemetery ("Cemetery"), located along State Road 50 ("SR-50"). (*See* Doc. 1-2, ¶¶ 1, 73.) SME designed and Pulte built a new luxury residential subdivision ("Subdivision") just west of the Cemetery. (*Id.* ¶¶ 11–12, 73–74.)

Residents had to drive through Oakland to get to the Subdivision, so for easier access, Defendants built a new drive ("Drive") to the Subdivision directly off SR-50, running along the east side of the Cemetery. (*See id.* ¶¶ 13, 73–74.) Before Defendants built the Drive, runoff water allegedly flowed east from the Cemetery along SR-50 and into retention ponds on adjacent property. (*Id.* ¶ 74.) But when the Drive was built between the Cemetery and that adjacent property, it allegedly became clear the Drive would flood. (*See id.* ¶¶ 14, 73–74.) So, after obtaining a

permit, Defendants built a culvert that diverted water off the Drive and back in the opposite direction—west, toward the Cemetery. (*Id.*)

In September 2020, it rained heavily in Oakland. (*Id.* ¶¶ 1, 17–18.) Defendants' culvert did what Plaintiffs say it was meant to do—diverted the water off the Drive and into the Cemetery. (*Id.* ¶¶ 1, 74.) The resulting flood in the Cemetery was so severe that caskets and remains rose up out of the ground, "disturbing and desecrating the generations of graves and remains that had been laid to rest there" and making it "too dangerous to visit." (*Id.* ¶ 18.)

Plaintiffs, who are families of the deceased buried at the Cemetery, then brought this class action suit against Defendants. (*Id. passim*.) The Complaint asserts claims for: (1) injunctive and declaratory relief, seeking to bar Defendants from further intruding on the Cemetery; (2) nuisance; (3) tortious interference with remains; (4) intentional infliction of emotional distress ("IIED"); and (5) interference with easement rights, as well as punitive damages. (*Id.*)

After several extended rounds of briefing, the pleadings finally closed. (Docs. 60, 72, 73.) Plaintiffs now move to certify this matter as a class action, with the class of families defined as, "All those who are or were next of kin of any decedent laid to rest at Oakland Tildenville Cemetery on or before September 28, 2020." (Doc. 77.) With another extended round of briefing (Docs. 87, 89, 94, 99, 101), the class certification Motion is ripe.

## STANDARDS

The party seeking class certification bears the burden of proof. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). A proposed class must first be "adequately defined and clearly ascertainable." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (cleaned up). If this requirement is met, courts then turn to the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019). Finally, to certify a Rule 23(b)(3) class action, "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and the class action must be "superior to other available methods." *Carriulo*, 823 F.3d at 985 (cleaned up). The certification analysis often "overlap[s] with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (cleaned up).

## ANALYSIS

**I.  Threshold Questions**

    **A.  Standing**

First, before reaching Rule 23, Article III requires named plaintiffs to have standing. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). Standing demands (1) a concrete, particularized injury; (2) caused by the defendant; (3) that is

redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). An injunction-seeking plaintiff must also show a real or immediate—rather than conjectural or hypothetical—threat of future injury. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001).

Here, Plaintiffs have standing to seek monetary relief. They allege emotional distress—a concrete injury. (Doc. 60, ¶¶ 57, 63, 70); *see Mraz v. I.C. Sys., Inc.*, No. 2:18-cv-254, 2020 WL 7125629, at *1 (M.D. Fla. Dec. 4, 2020). They trace the distress to Defendants' conduct—constructing a culvert that flooded the Cemetery—and they seek to redress their injuries with money damages. (Doc. 60, ¶¶ 49, 56, 63.) Article III requires no more.[1] Thus, Plaintiffs have standing.

### B. Ascertainability

Next, the Court turns to Plaintiffs' proposed class: "All those who are or were next of kin of any decedent laid to rest at Oakland Tildenville Cemetery on or before September 28, 2020." (Doc. 77, p. 1.) A proposed class must be "adequately defined and clearly ascertainable." *Carriuolo*, 823 F.3d at 984 (cleaned

---

[1] Though the Court finds below that Plaintiffs have not met their burden to seek an injunctive class, Plaintiffs also have standing to sue for injunctive relief. They allege that Defendants' culvert caused the Cemetery to flood in September 2020, and they fear it will happen again. (Doc. 60, ¶¶ 17, 35.) Defendants suggest this lone incident does not show an imminent risk of future floods. (Doc. 87, p. 15.) But the flood occurred shortly after the culvert's construction (Doc. 87-1, p. 10), and the culvert is still in place. (Doc. 60, ¶¶ 49, 57, 63, 70; Doc. 87, p. 14.) So the prospect of future flooding is likely enough to create a real threat of injury. *See, e.g., St. Bernard Par. Gov't v. United States*, 121 Fed. Cl. 687, 716–17, 739 (Fed. Cl. 2015), *rev'd on other grounds*, 887 F.3d 1354 (Fed. Cir. 2018) (finding real and immediate risk of future flooding based on a severe flood six years prior and intermittent flooding after).

up). A class is ascertainable if membership is based on objective criteria. *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). A class is not ascertainable if membership turns on vague or subjective criteria. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

Here, the proposed class is adequately defined. Membership is based on a legal term—next of kin—determinable by reference to objective statutory definitions. *See* Fla. Stat. §§ 744.102, 731.201. So the class is ascertainable.

## II.     Rule 23(a)

Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Defendants argue that the proposed class fails at each step. The Court disagrees.

Generally, a class over forty is numerous enough for class treatment. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, counsel for the putative class asserts they have been retained by over 350 next of kin (Doc. 77-6, ¶ 5), making it numerous enough to prevent practicable joinder other than by class treatment.

Commonality is a "light burden" that requires "at least one issue" that will affect all or most of the putative class. *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 315 (M.D. Fla. 2018). Whereas predominance and susceptibility of key issues to common proof is a stickier wicket, commonality is easily met here as

6

there is at least one overarching question that affects the class: did Defendants cause the Cemetery to flood? *See, e.g., id.*; *James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011).

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden*, 247 F.3d at 1287 (cleaned up). A claim is typical if it is based on the same legal theory as the class. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). Here, the named representatives submitted discovery responses identifying themselves as next of kin and suffering the same or similar injuries as the rest of the class based on the interference with their gravesite rights given the overarching common issue: the cause of the flood. (Docs. 77-1 to 77-5, p. 3.)

Adequacy similarly "requires that both the named plaintiffs and their counsel will fairly and adequately protect the interests of the class." *Andreas-Moses*, 326 F.R.D. at 316. Defendants focus on the causation issue—discussed later—but do not otherwise challenge the adequacy of the individually named plaintiffs. (Doc. 87, p. 13.) Rather, Defendants argue that Plaintiffs' counsel has not devoted enough resources. (*Id.*) But the putative class counsel are experienced, and there is no affirmative showing they could not protect the interests of the class. (*See* Doc. 77-6.)

With the Rule 23(a) requirements met, the Court turns to the more

7

challenging requirements of Rule 23(b).

**III.     Rule 23(b)**

Rule 23(b) offers two certification paths: Rule 23(b)(2) is reserved for classes seeking class-wide injunctive relief, whereas Rule 23(b)(3) is available where class-wide questions predominate and class litigation is the superior method of adjudication. Plaintiffs mainly focus on the latter vehicle here.[2]

Rule 23(b)(3) certification is available when common questions of law or fact "predominate" over individual questions. Fed. R. Civ. P. 23(b)(3). To gauge predominance, courts must identify the elements of the claims and defenses, then classify the issues as common or individual. *Brown*, 817 F.3d at 1234. Common issues are susceptible to evidence that resolves the issue on a simultaneous, class-wide basis. *Id.* Once classified, courts must determine whether common issues predominate over individual ones; common issues predominate when they have a more direct effect on liability than individualized issues. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009).

Here, Plaintiffs bring four monetary claims: (1) nuisance; (2) tortious interference with remains; (3) IIED; and (4) easement interference. (Doc. 60.) Each

---

[2] Plaintiffs make the briefest of stabs at Rule 23(b)(2) certification, given their first count for injunctive relief. (Doc. 77, pp. 18–19.) But their emotional distress damages, which they seek on every other cause of action (Doc. 60, ¶¶ 49, 57, 63, 70, 81), require individualized injury inquiries, so they belong in Rule 23(b)(3). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). And Plaintiffs make no convincing argument for any sort of hybrid class, which can prove unwieldy anyway.

is anchored to the contention that Defendants desecrated graves by diverting floodwater into the Cemetery. (*Id.* ¶¶ 35, 41, 50, 58, 64.) These claims feature several common issues, including: whether the culvert caused floodwater to flow into the Cemetery; whether Defendants' use of the property was reasonable; whether Defendants acted with the requisite state of mind; and whether Plaintiffs have an enforceable right in their family member's remains and in an easement. (Doc. 77, pp. 7–14.) Several affirmative defenses also turn on common questions, including: whether Defendants obtained the necessary permits for the culvert; whether those permits bar liability; whether an "act of God" caused the flooding; whether Defendants can shift liability to one another or a third party; whether Plaintiffs' relief amounts to economic waste; and whether Defendants' remediation of the stormwater system bars Plaintiffs' claims. (*Id.* at 14–16.)

Notably, all four counts share two core questions: (1) did floodwater interfere with Plaintiffs' rights;[3] and (2) did Defendants' culvert cause the interference? Defendants argue that individualized evidence is necessary to prove interference and causation. (Doc. 87, p. 9.) They point to a report by their expert, who states that topographical variations in the Cemetery affected the extent of

---

[3] Tortious interference with a dead body requires proof that floodwater actually affected the remains. *See Williams v. City of Minneola*, 575 So. 2d 683, 688–89 (Fla. 5th DCA 1991). Plaintiff's IIED claim requires the same. (Doc. 60, ¶¶ 58–59; Doc. 24, pp. 11–13.) Easement interference similarly requires proof that floodwater actually interfered with Plaintiffs' ability to access and maintain their kin's grave. *Mingledorff v. Crum*, 388 So. 2d 632, 636 (Fla. 1st DCA 1980). And nuisance requires proof of either. (Doc. 60, pp. 12–13.)

flooding, concluding that each gravesite must be individually evaluated to determine whether floodwater affected the area and whether floodwater specifically from the culvert caused the alleged damage. (Doc. 87-1, pp. 13, 16–17.) To combat this, Plaintiffs submit photographs of the flooded Cemetery (Doc. 94-2), which they contend show that "the entire Cemetery was flooded, injuring and impairing the rights of every family." (Doc. 94, p. 6.) Plaintiffs also rely on an affidavit by Sharon Ranson,[4] president of the board that oversees the Cemetery, generically claiming that flooding interfered with the families' ability to visit the graves and that the Cemetery did not flood before the culvert's construction. (Doc. 79-1, p. 1.) True, the photographs show a high level of flooding, but it is unclear whether every grave is flooded and to what extent.[5] And it is unclear whether all floodwater in the Cemetery was attributable to the culvert. So on the current record, the Court cannot sufficiently determine whether these core issues—which cut across all four claims—are susceptible to common evidence or not.[6]

---

[4] As this question requires more evidence, the Court need not evaluate at this stage Defendants' argument that Ranson's affidavit should be disregarded. (Doc. 87, p. 5.) They may re-address this issue on Plaintiffs' renewal.

[5] Plaintiffs also argue that the amount of floodwater affecting each grave only relates to damages, not liability. (Doc. 94, p. 7.) True, but the issue is not the amount of floodwater affecting each grave, but *whether* floodwater affected each grave—and that goes to liability, not damages. *See Cordoba v. DIRECTTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) ("The issue of liability includes not only the question of violation, but also the question of fact of injury." (cleaned up)).

[6] Plaintiffs' damages will also require individualized inquiry. *See Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (regarding IIED damages). While this is relevant to

With it being unclear whether certain key questions are susceptible to common proof, the Court cannot conclude—at this point—that common issues predominate.[7] Proof of causation especially could require nuanced scientific evidence. (*See* Doc 87-1, pp. 13–14.) The critical question, then, is whether Plaintiffs can prove through common evidence that all floodwater in the Cemetery affected all graves and was attributable to the culvert. Ranson's affidavit suggests that these issues are susceptible to common evidence, but the conclusory nature of that affidavit and the photographs prevents the Court from determining that at this stage.[8] But more discovery—the bulk of which has taken place during the pendency of this Motion, and which will close soon on the merits—will likely clarify the issue. So while the Motion is due to be denied, it is only without prejudice subject to renewal.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion

---

predominance, individual damages questions generally do not defeat certification. *Brown*, 817 F.3d at 1239. Plaintiffs concede that their emotional distress damages could vary based on individualized evidence. (Doc. 60, ¶¶ 49, 57, 63, 70.) So they ask the Court to bifurcate the proceedings, certify the liability issues, and reserve damages for individualized treatment. (Doc. 77, p. 21.) The Court will take up this issue on renewal if Plaintiffs can show that common issues predominate on liability.

[7] Because the predominance analysis "has a tremendous impact on the superiority analysis," *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010), the Court also finds that added discovery on causation will help clarify whether a class action is superior to other available methods.

[8] Typically, plaintiffs proffer experts who propose a method for determining the extent of flooding on a class-wide basis. *See, e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017).

(Doc. 77) is **DENIED WITHOUT PREJUDICE**.

Having found the rest of the prerequisites met, noting that added discovery may make the common proof and causation questions clearer as they are tied up in the merits liability inquiry, and with the overall case discovery closing soon, the Court finds that renewal of the certification motion is permitted.[9] The Court will permit Plaintiffs to renew their motion by December 5, 2022, via a brief of no more than fifteen pages, with Defendant's response due by Friday, December 30, 2022, and limited to ten pages. The parties need not address the threshold or Rule 23(a) inquiries, as the Court has found those satisfied; the briefing should solely address whether the Rule 23(b)(3) inquiry is satisfied and provide more evidence as necessary.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 17, 2022.



ROY B. DALTON JR.
United States District Judge

---

[9] *See Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002); *e.g. Moore v. GNC Holdings, Inc.*, No. 12-61703, 2013 WL 12237746, at *3 (S.D. Fla. July 9, 2013); *Terrill v. Electrolux Home Prod., Inc.*, 274 F.R.D. 698, 701 (S.D. Ga. 2011); *cf. Narvaez v. L. Offs. of Antonio Duarte, III, P A.*, No. 8:14-cv-1646, 2014 WL 12872855, at *2 (M.D. Fla. Sept. 12, 2014).